SAMUEL B. HOPKINS *vs.* WILLIS A. COLSON & others.

Suffolk. December 6, 7, 1892. — March 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Legacy — Specific Language — Support of Legatee.*

A testatrix by her will directed her executors to " pay to the Old Ladies' Home in Boston a sum sufficient to secure a home for life " to her sister. *Held*, that the language of the will was specific, and that there was nothing in it indicating that, if for any reason her sister would not accept such a home, or if it could not be procured, she should be entitled to be supported elsewhere out of the estate.

APPEAL, by Mary D. McLea, Willis A. Colson, and Marion E. Talcott, as guardian of Bessie and George Colson, from a decree of the Probate Court for Suffolk County allowing two accounts of George C. Leach as trustee under the will of Elizabeth P. Colson. The second account was rendered by Samuel B. Hopkins, executor of the will of George C. Leach.

In the Probate Court the case was referred to an auditor, who disallowed certain payments to Prudence Pray, a sister of the testatrix, and for her benefit and funeral expenses, amounting in the first account to $409.93, and in the second account to $1,005.34.

The case was heard upon the auditor's report, upon an agreed statement of facts, and upon the will, by *Allen*, J., who reserved it for the consideration of the full court. The material facts appear in the opinion.

*J. Willard*, for the plaintiff.

*S. L. Whipple,* for the defendants.

FIELD, C. J. The third article of the will of Mrs. Colson is as follows: "Third. I will and direct that at my decease my executors pay to the Old Ladies' Home in Boston a sum sufficient to secure a home for life to my sister, Prudence Pray. I also bequeath to her the sum of five dollars annually, to spend as she sees fit. And I further direct my executors to see that she is suitably clothed."

It appears from the auditor's report that, after the death of Mrs. Colson, Mr. Leach, the executor of the will, who was afterwards appointed trustee, made application "for Miss Pray's admission to the Old Ladies' Home in Boston, and there seem to have been some negotiations in regard to it, but for some reason — exactly what does not appear — she was never received into the Home. Mr. Andrew Cushing, the president of that institution, testified, and the rules of that institution provide, that the amount to be paid for admission is $150. Mr. Cushing testified that this was the lowest amount. It was the amount when no other arrangement was made. They require a person having property, on coming into the Home, to give it all up to the Home, and to sign a bond to give up all their future acquired property to the Home. A person who is received into the Home has provided by that institution food, clothing,

medical attendance, and all things necessary for a comfortable living, and is buried at the expense of the Home."

The fourteenth article of the will is as follows: "Fourteenth. I give and bequeath to my three children, Willis A. Colson, Angelina E. Leach, and Mary D. McLea, and my two grandchildren, Bessie and George Colson, children of my son, George H. Colson, deceased, in equal shares, all the rest and residue of my property, including the remainder of my furniture, real estate, notes, bonds, or other securities, in trust, the income of which, excepting as directed in the third item, shall be shared equally between them, to dispose of as they severally shall see fit, during the lifetime of each. The principal to be divided equally among their children at their decease; but in case either of my children shall die without issue, their share shall be divided equally among the surviving grandchildren. At the death of either or both of my above named grandchildren, Bessie or George Colson, their share or shares shall be divided equally among my heirs."

The amount of all the property left by Mrs. Colson was about $8,000 in real property and $2,700 in personal property, " consisting mainly of articles of property and household furniture, which are covered by specific bequests of the will."

It is conceded that Miss Pray was entitled to be suitably clothed at the expense of the estate while she lived, and to receive out of it five dollars a year for spending money. The dispute is whether, as she was not received into the Home, she was entitled to be supported elsewhere while she lived, at the expense of the estate, and to be buried at its expense when she died.

The auditor ruled that she was not so entitled, and found that items of credit to the amount of $409.93 in the first account of Mr. Leach, and to the amount of $1,005.34 in the second account, should be disallowed. Mrs. Colson died on March 9, 1884, and Miss Pray died on June 10, 1889.

In *Parker* v. *Parker*, 126 Mass. 433, 437, it is said: "Where a testator provides in his will that his wife, child, or other person shall be supported and maintained by his executor, or where the condition of a deed or mortgage recites that the grantee or mortgagor shall support the grantor or mortgagee, and the in-

strument does not point out that the support shall be provided in a particular place, then the party so entitled may have the support where under reasonable limitations he may choose to reside. But if the instrument points out the place where the support shall be furnished, it is not the right of the party entitled to receive it to demand that it shall be furnished elsewhere. Each case must be decided on its own facts, looking at the language of the instrument and the surrounding circumstances." It is manifest that, if the contention of the accountant is correct, there would be little or nothing of the estate to be distributed under the fourteenth article of the will during the life of Miss Pray. If, however, the testatrix contemplated that a sum of money should be paid at once to the Old Ladies' Home, there probably would be left a considerable amount of property, the income of which, subject to an annuity of five dollars a year to her sister, and perhaps to the payment of a small sum required for her clothing, might be distributed among the three children and two grandchildren mentioned in the fourteenth article; and in the event of the decease of any of them, a part of the· principal might be divided among their issue, or the surviving grandchildren, or the heirs of the testatrix. The language of the third article of the will is specific, that the executor pay to the Old Ladies' Home a sum sufficient to secure a home for her sister, and there is nothing in the article, or in the rest of the will, indicating that, if for any reason her sister would not accept such a home, or if it could not be procured, her sister should be entitled to be supported elsewhere out of the estate. It does not, indeed, appear in the case that it was impossible to obtain the admission of Miss Pray into the Home. It is consistent with the finding of the auditor, that the negotiations for her admission failed because Miss Pray or her relations were unwilling that she should enter the Home, or because she was unwilling to surrender to the Home all the property she then had or might thereafter acquire. But whatever may have been the cause why she was not admitted to the Home, we are satisfied that the third article of the will cannot be considered as making a general provision for the support of Miss Pray, with a statement by the testatrix of the manner in which she preferred that it should be furnished, but must be construed as giving a

specific direction to the executor, which must be carried out in the manner prescribed or not at all. The decree of the Probate Court must be reversed, and there should be a decree according to the finding of the auditor.                    *So ordered.*